IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MONTE MATTSON,

                Plaintiff,                OPINION AND ORDER

v.

                                              21-cv-428-wmc

KILOLO KIJAKAZI, Acting Commissioner
for Social Security,

                Defendant.

---

Pursuant to 42 U.S.C. § 405(g), plaintiff Monte Mattson seeks judicial review of the Social Security Commissioner's final determination, which upheld Administrative Law Judge ("ALJ") Dean Syrjanen's finding that he was not disabled. On appeal to this court, plaintiff maintains that the ALJ failed to account for two material limitations in formulating Mattson's residual functional capacity ("RFC"): (1) his mental health limitations, particularly with respect to concentration, persistence and pace, as well as social interactions; and (2) his physical limitations, particularly with respect to handling, fingering, lifting and carrying, as well as his need to nap and recline.[1] Because the court agrees the ALJ's treatment of Mattson's mental health limitations was flawed, the Commissioner's denial of benefits will be reversed and remanded for further proceedings consistent with this opinion.

---

[1] In addition to these challenges on the merits, plaintiff also contends that the Acting Commissioner holds his office on a constitutionally illicit basis, relying on the United States Supreme Court's relatively recent decision considering the authority of the Consumer Financial Protection Bureau's Director in *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183 (2020). The court rejects this challenge for the same reasons set forth in *Schwechel v. Kijakazi*, No. 20-CV-700-WMC, 2022 WL 135022, at *5 (W.D. Wis. Jan. 14, 2022).

FACTS[2]

**A. Background**

Plaintiff Monte Mattson is at least a high school graduate, is able to communicate in English, and experienced as an CNC machinist, tool and dye worker and mold maker, all of which he performed at the heavy exertional level. Mattson previously applied for disability insurance benefits, and that application was denied. In a second application, filed November 14, 2019, plaintiff initially clamed an onset disability date of February 22, 2013. (AR 94.) However, the ALJ concluded that the denial of his first application precluded any claim to disability before December 5, 2018 (AR 19), which Mattson does not challenge in this appeal. With a date last insured of December 31, 2018, therefore, his application now only concerns the period from December 5 through December 31, 2018, although the ALJ did conclude that Mattson had not engaged in substantial gainful activity during this period.

With a birth date of April 5, 1965, Mattson was 53 years old on his date last insured, defining him as an individual closely approaching advanced age. 20 C.F.R. § 404.1563. Mattson claimed disability based on the following conditions: "cervical myelopathy, radiculopathy, cervical disc degeneration, syrinx of spinal cord, anxiety, depression, agoraphobia, panic attacks, cervical spondylosis, neck pain right, myofascial pain syndrome, scapulalgia, weakness in legs, balance problems, arms are weak, grip in . . . hands are gone and cervical fascia." (AR 94.)

---

[2] The following facts are drawn from the administrative record, which can be found at dkt. #7.

**B. ALJ Decision**

ALJ Syrhanen held a telephonic hearing on February 2, 2021, at which Mattson appeared personally and through his counsel. On March 4, 2021, the ALJ issued an opinion finding that Mattson had not been under a disability within the meaning of the Social Security Act from December 5 through December 31, 2018.

The ALJ first agreed that Mattson had the following severe impairments during this period: "cervical disc disease, anxiety disorder and depressive disorder." (AR 22.) The ALJ also considered Mattson's claims of hypertension, thoracic spine limitations and myofascial pain syndrome, but concluded that none were severe impairments, which Mattson also does not challenge on appeal.

Next, the ALJ considered whether Mattson's impairments or combination of impairments met or medically equaled various mental impairment Listings, concluding that they did not. (AR 22-24.) While not challenging the ALJ's negative finding with respect to his degenerative disc disease under the requirements of Listing 1.04, Mattson does challenge, at least tangentially, the ALJ's conclusions about his mental health limitations in light of the Paragraph B categories under Listings 12.04 and 12.06. Specifically, the ALJ concluded that Mattson had mild limitations with respect to understanding, remembering or applying information, but had moderate limitations with respect to the other three categories, concentrating, persisting or maintaining pace; interacting with others; and adapting or managing oneself. (AR 23.) In making these findings, the ALJ relied on two Function Reports completed by Mattson and his wife on April 12 and

October 14, 2018 (*id.* (citing Exs. C2E and C5E[3])), as well as treatment records. However, there is no indication that the ALJ relied on the state agency psychological consultants' opinions in rendering his assessment of Mattson's mental health limitations.

After setting forth the standard under SSR 16-3p, the ALJ also described plaintiff's testimony and account of his limitations in Function Reports. Specifically, with respect to physical limitations, Mattson reported: difficulty with bending, lifting, stretching, or repetitive use of the arm and shoulder; difficulty with walking at times, estimating that he is able to walk 100 yards; limited to standing for one hour and sitting for one hour; unable to lift a gallon of milk; having poor balance; and issues with grip, and more generally with use of his right hand. (AR 24.) With respect to mental health limitations, Mattson also reported irritability and difficulty concentrating due to pain and fatigue and that he experienced panic attacks and depression. (*Id.*)

The ALJ then reviewed the medical record with respect to physical limitations, including Mattson's cervical spine surgery in December 2014, and a January 2018 MRI showing: "cervical spondylosis most pronounced at C5-6, C4-5, and C3-4," "multiple levels of neural foraminal narrowing," but "without clear evidence of nerve root impairment and no evidence of significant cord impingement." (AR 25.) A February 2018 examination also found "no cervical, lumbar, or thoracic pain and full range of motion in flexion and extension." (*Id.*) Moreover, his "[m]otor strength was 5/5 in all four extremities, and

---

[3] While the ALJ cited to C5E in his opinion, the correct citation is to C4E, which the ALJ cites later in the same paragraph of the opinion.

4

muscle tone and bulk were within normal limits," with the neurosurgeon recommending conservative treatment. (*Id.*)

Even so, in a March 2018 appointment, plaintiff reported pain with flexion and extension of the cervical spine and right rhomboid tenderness. At that time, he received trigger point injections, and medical notes from his June 2018 appointment reveal normal movement and motor strength of the extremities and intact sensation. The ALJ also noted that the medical record (1) did not describe any difficulty in his standing or ambulating, and (2) described his having a normal gait. The ALJ also noted that the medical record did not support a finding of any issues with grip or right upper extremity functioning -- specifically noting that the June 2018 examination revealed normal grip strength and sensation. Based on this review, the ALJ concluded that Mattson could perform light exertional level work with the additional exertional restrictions in the RFC.

The ALJ similarly reviewed the medical record with respect to Mattson's mental limitations, noting that his treatment has primarily concerned medication management. At a June 2018 appointment, Mattson reported improvement in his mood and anxiety symptoms on his then medication regimen. Moreover, the treatment provider noted that Mattson's affect was generally appropriate and his stated mood was "okay." The ALJ also found his concentration was functionally intact, because he was able to participate in the appointment with "no more than average distractibility." (AR 25.) And while his health care provider recommended ongoing therapy at that time, there is no indication that he initiated any sessions.

Instead, Mattson followed up six months later, reporting in December 2018 that he was "quite anxious," but had also reduced the amount of a medication prescribed for anxiety with the goal of tapering off. Here too, the provider found that his attention and concentration were functionally intact, although his affect was "restricted." He was then told to follow-up in four to six months, or on an as-needed basis, with his next appointment not scheduled until July 2019, which is *after* the relevant period.

Based on this record, the ALJ concluded that Mattson's psychiatric symptoms were generally stable and controlled with medication. The ALJ also concluded that: (1) in light of moderate limitations in concentration, persistence or pace ("CPP"), Mattson "had the cognitive capability to perform simple, routine, repetitive tasks," and (2) "his anxiety, and in particular his moderate limitations in adapting and managing himself, limited him to low stress jobs." (AR 26.) Finally, to address his irritability, the ALJ limited him to only occasional interactions with supervisors, co-workers and members of the public.

Finally, the ALJ then considered the opinions of various medical experts, finding the opinion of state agency medical consultants "generally persuasive," with the adoption of additional upper right extremity restrictions in light of Mattson's testimony and records indicating right shoulder pain. As for the opinions of the state agency psychologist, the ALJ found them "somewhat persuasive." While the ALJ credited the finding of moderate limitations for three of the categories, he "did not adopt the assessed limitations directly, . . . because they contain vague and undefined phrases like 'little contact,' 'may require some encouragement,' and 'fairly regular set of job duties.'" (AR 26.) The ALJ further considered the findings of Scott Stuempfig, M.D., but concluded that his opinions were

6

"unpersuasive," because: (1) the treatment findings do not indicate any difficulty standing, walking or sitting and (2) Stuempfig only saw Mattson on one occasion in September 2020. The ALJ further concluded that Stuempfig's opinion was inconsistent with the frequency of treatment and the nature of treatment, consisting of medication and injections, which he characterized as conservative.

At step four, the ALJ found that even with his impairments, Mattson had the residual functional capacity ("RFC") to perform light work, with the following additional exertional restrictions: "can never climb ladders, ropes, or scaffolds; never crawl; frequently reach, handle, and finger with the right upper extremity; occasionally push and pull with the right upper extremity; occasionally reach overhead with the right upper extremity." (AR 24.) Moreover, the ALJ included the following nonexertional restriction: "limited to simple, routine, repetitive tasks; limited to low stress work, defined as jobs with simple decision making and no more than occasional changes; limited to occasional interaction with supervisors, co-workers, and the public." (*Id.*)

With the assistance of a vocational expert, the ALJ ultimately concluded that Mattson could not perform his past relevant work in light of his RFC, but determined that there were jobs in sufficient numbers in the national economy that he could perform, including marker, office helper and routing clerk. As such, the ALJ concluded that Mattson was not under a disability from December 5, 2018, through December 31, 2018. This appeal followed.

OPINION

The standard by which federal courts review a final decision by the Commissioner of Social Security is now well-settled: findings of fact are "conclusive," so long as they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Moreover, provided the Commissioner's findings under § 405(g) are supported by this kind of "substantial evidence," this court cannot reconsider facts, re-weigh the evidence, decide questions of credibility, or otherwise substitute its own judgment for that of the ALJ. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Finally, where conflicting evidence allows reasonable minds to reach different conclusions about a claimant's disability, the responsibility for the decision falls on the Commissioner. *Edwards v. Sullivan*, 985 F.2d 334, 336 (7th Cir. 1993).

At the same time, courts must conduct a "critical review of the evidence," *id.*, ensuring that the ALJ has provided "a logical bridge" between findings of fact and conclusions of law. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). Here, as described above, plaintiff raises two, core challenges, both with several sub-arguments, which the court addresses in turn below.

**I. Treatment of Mental Limitations**

Plaintiff contends that the ALJ erred in several respects in his treatment of Mattson's mental limitations. *First*, with respect to plaintiff's social interaction limitations, the ALJ found them to be moderate, which was consistent with the opinion of the state agency psychological consultants, and therefore, limited him to occasional interactions

with supervisors, coworkers and the public. However, even though the state agency psychological consultants concluded that plaintiff also had "difficulty accepting instructions and responding appropriately to criticism from supervisors" (AR 107, 126), the ALJ failed to acknowledge this finding or incorporate it into the RFC.

In response, the Commissioner argues that the ALJ accounted for the state agency psychologists' opinion that Mattson "would likely struggle to accept instructions and respond appropriately to criticism from supervisors" by limiting him to occasional interactions. (Def.'s Opp'n (dkt. #13) 10 (citing AR 107, 126).) Unfortunately, this argument fails to account for the difference between the *quantity* of interactions and the *quality* of those interactions. As this court recently explained in *Watson v. Kijakazi*, No. 21-CV-120-WMC, 2022 WL 325586 (W.D. Wis. Feb. 3, 2022), "'occasional' [refers] to the quantity of time spent with individuals, whereas 'superficial' refers to the quality of the interactions." *Id.* at *4 (citing *Greene v. Saul*, No. 3:19-cv-006870-JD, 2020 WL 4593331, at *4 (N.D. Ind. Aug. 11, 2020); *Wartak v. Colvin*, 2:14-cv-401, 2016 WL 880945, at *7 (N.D. Ind. Mar. 8, 2016))). As such, "[e]ven a job that requires only occasional interaction could require an employee to engage in prolonged or meaningful conversations during those few occasions." *Greene*, 2020 WL 4593331, at *4 (internal citation and quotation marks omitted). Accordingly, the court agrees with plaintiff that the ALJ failed to adequately consider plaintiff's difficulty with accepting instructions and responding appropriately to criticism from supervisors, *or* at minimum, the ALJ failed to build a logical bridge between those limitations and the portion of the RFC purportedly crafted to address them, warranting a remand.

*Second*, plaintiff also argues that the ALJ failed to address his moderate limitations with respect to CPP.  While the Commissioner claims that the ALJ did so by limiting him to simple, repetitive tasks, the Seventh Circuit has held that limiting a claimant to simple, repetitive tasks may not be enough to address moderate limitations in CPP because "[t]he ability to stick with a given task over a sustained period is not the same as the ability to learn how to do tasks of a given complexity."  *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010).  Here, in particular, the state agency psychological consultants did *not* limit Mattson to simple tasks to address his CPP issues; instead, as plaintiff explains in his reply brief, the state agency psychological consultants concluded that Mattson should be limited to simple tasks to address his moderate limitation in understanding, remembering and applying information.  (AR 106, 125.)  In contrast, with respect to his CPP limitations, the state agency medical consultants specifically concluded that Mattson had issues with performing at a consistent pace without an unreasonable number and length of rest periods.  (*Id.*)

In response, the Commissioner argues that the Seventh Circuit has also recognized "that an ALJ can rely upon a psychologist who accounts for moderate ratings by providing restrictions such as only simple tasks." (Def.'s Opp'n (dkt. #13) 11 (citing *Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021)).)[4]  Fair enough, but again, the state agency

---

[4] The Commissioner also spends several pages of her opposition brief limiting the extent of plaintiff's mental health issues.  (Def.'s Opp'n (dkt. #13) 12-14.)  Critically, however, the ALJ concluded that Mattson *had* moderate limitations in three of the four paragraph B categories, and, therefore, the ALJ was required to consider those limitations in crafting the RFC. On appeal to this court, the Commissioner cannot now "cure" the ALJ's failure to address those limitations by arguing that Mattson's mental health issues did not warrant the ALJ's finding of moderate limitations in CPP or in other categories.

10

psychological consultants did *not* opine that Mattson's CPP limitations could be addressed by limiting him to simple tasks. Instead, both opined that due to his anxiety and pain, he easily becomes distracted *and* "may require encouragement to continue tasks." (AR 106-07, 126.) The ALJ failed to address this limitation or otherwise build a logical bridge between limiting Mattson to simple, routine, repetitive tasks and the moderate limitations in CPP that the ALJ himself found. As such, the court agrees that this error also warrants remand.[5]

## II. Treatment of Physical Limitations

Having determined that the ALJ's treatment of Mattson's mental limitations warrants remand, the court will only comment briefly on plaintiff's arguments with respect to his challenge to the ALJ's treatment of his physical limitations, finding these arguments generally less persuasive. Specifically, plaintiff contends that the ALJ failed to address the evidence demonstrating (1) his need to nap or recline, (2) his inability to frequently handle and finger, and (3) his inability to lift and carry up to 20 pounds occasionally and ten pounds frequently. These arguments primarily concern the ALJ's treatment of plaintiff's subjective statements under SSR 16-3 and his evaluation of the opinions of Dr. Stuempfig. As detailed above, however, the ALJ appropriately focused his attention on the records from 2018, describing in great detail why those records did not support the more extreme limitations to which plaintiff claimed he was entitled. (AR 25.) Moreover, with respect to

---

[5] Relatedly, plaintiff also contends that the ALJ erred in failing to consider whether Mattson required an off-task accommodation. Because this appears related to his CPP limitations, the ALJ may consider this further on remand.

Dr. Stuempfig's opinions in particular, the ALJ adequately explained his reasons for discounting his 2020 opinion based on the fact that: Stuempfig only saw Mattson once during the relevant period; his treatment notes from that appointment do not support the restrictions he opined were necessary; and his opinion is inconsistent with the broader record, consisting of minimal and conservative treatment during 2018. (AR 26.)

For these reasons, had plaintiff only raised challenges with respect to the ALJ's treatment of his physical limitations, the court would likely have affirmed the denial of benefits. However, the ALJ is free to reevaluate this evidence in addressing plaintiff's challenges on remand, should he find it appropriate.

ORDER

IT IS ORDERED that:

1) The decision of defendant Kilolo Kijakazi, Acting Commissioner of Social Security, denying plaintiff Monte Mattson's application for disability insurance benefits is REVERSED AND REMANDED under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

2) The clerk of court is directed to enter judgment in plaintiff's favor and close this case.

Entered this 20th day of May, 2022.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge